E-FILED
Tuesday, 17 August, 2004  04:50:16 PM
Clerk, U.S. District Court, ILCD

AGREEMENT AND DECLARATION OF TRUST
OF
NECA-IBEW WELFARE TRUST FUND

WHEREAS, an Agreement and Declaration of Trust was entered into the 21st day of November, 1955, by and between the DECATUR DIVISION, the SPRINGFIELD DIVISION, the PEORIA DIVISION, the CHAMPAIGN DIVISION and the DANVILLE DIVISION of the ILLINOIS CHAPTER of the NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION: DECATUR LOCAL 146, SPRINGFIELD LOCAL 193, PEORIA LOCAL 34, CHAMPAIGN LOCAL 601, and DANVILLE LOCAL 538, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; and WARREN DECATUR, GEORGE CAST, JR., HARRISON F. BLADES, A. C. KOHLI, MELVIN WILLIAMS, FLOYD SNYDER AND WILLIAM AHLENIUS, who with their successors designated in the manner herein provided are hereinafter called the "Trustees".

WHEREAS, the original Agreement has been amended from time to time; and

WHEREAS, the Trustees desire that said Agreement and Declaration of Trust be amended and restated;

NOW, THEREFORE, by virtue of the authority vested in them by Article XVII of the Agreement and Declaration of Trust of the NECA-IBEW WELFARE TRUST FUND the Trustees hereby amend the Agreement and Declaration of Trust effective _____ and, as amended, restate it as follows:

## ARTICLE I

## NAME OF THE TRUST

The Trust maintained hereunder shall be known as the NECA-IBEW WELFARE TRUST FUND and the business and affairs of the Trust shall be conducted in that name, and the Welfare Fund may sue or be sued in that name.

## ARTICLE II

## DEFINITIONS

Section 1.    The term "Association" shall mean any Association of Electrical Contractors and/or Chapter of the National Electrical Contractors Association, Inc., who becomes party to or bound by this Agreement.

EXHIBIT

C

Section 2.    The term "Collective Bargaining Agreement" shall mean an agreement relating to the terms and conditions of employment of Electricians and any amendments, renewals or modifications thereof between the Local Unions affiliated with the International Brotherhood of Electrical Workers and the Association or individual Employers of Electricians within the jurisdiction of the International Brotherhood of Electrical Workers.

Section 3.    The term "Electrician" shall mean any employee engaged in doing work of the character falling within the jurisdiction of the Local Unions affiliated with the International Brotherhood of Electrical Workers.

Section 4.    (1)  The term "Employee" shall mean and include:

> (a)  All Electricians employed by a Participating Employer on whose behalf a Union acts as bargaining agent and who are covered by a collective bargaining agreement requiring contributions by a Participating Employer to the Trust Fund;
>
> (b)  All active full-time employees of a Participating Employer who are not included in the bargaining unit but on whose behalf said Participating Employer agrees to make and the Trustees agree to accept contributions;
>
> (c)  All active full-time employees of the Union on whose behalf said Union agrees to make and the Trustees agree to accept contributions;
>
> (d)  All active full-time employees of an Association on whose behalf said Association agrees to make and the Trustees agree to accept contributions;
>
> (e)  All full-time employees of a Participating Employer described in Section 6(b) of this Article.
>
> (f)  Those employees of the current Administrator who are employed in the Decatur, Illinois office of such administrator and all full-time employees of the current Attorney to the Fund.

2.

(g)    Employees of Participating Employers described
in Article I, Section 6(d) hereof on whose
behalf contributions had previously been made
to this Trust Fund while they had been
employed as Electricians.

(h)    Those employees of any local, state, regional,
national or international labor organization
of which the Union is an affiliate on whose
behalf contributions had been made to the
Trust Fund while they were employed as
Electricians, provided that a participation
agreement has been entered into between such
labor organization and the Trustees as
provided in Article I, Section 2(d) hereof.

(2)    Individual owners, sole proprietors and partners
shall not be considered Employees.

Section 5.    The term "Employer Contributions" or
"Contributions" shall mean payments due from, or made by,
Employers to the Welfare Fund hereby created pursuant to the
provisions of this Trust Agreement or any Collective Bargaining
Agreement.

Section 6.    The term "Participating Employer" shall
mean any of the following:

(a)    any person, partnership, firm or corporation
employing Electricians who has become a party
to or become bound by this Agreement and who
has agreed by a Collective Bargaining Agreement
with the Union or a Participation Agreement
with the Trustees to make contributions to
the Trust Fund.

(b)    The Association, the Union, any Building
Trades Council with which any Union is
affiliated, the National Electrical Health
and Welfare Fund, and any Apprenticeship
Committee, Apprenticeship Trust and Receiving
Trust which was created by agreement between
an Association and a Union for those of
its full-time employees on whose behalf
contributions are required to be made to this
Trust Fund.

3.

(c) The current Administrator of the Fund shall be considered as a Participating Employer for the purpose of making contributions solely for those of its full-time employees who are employed in the Decatur, Illinois office of such Administrator and the current Attorney for the Fund shall be considered as a Participating Employer for the purpose of making contributions for its full-time employees.

(d) Any local, state, regional, national or international labor organization of which a Union is an affiliate may make contributions on behalf of those of its employees on whose behalf contributions had been made to the Trust Fund while they were employed as Electricians. Contributions on behalf of such individuals shall be made at the rate per hour and for the number of hours per month as may be established in a Participation Agreement between such labor organization and the Trustees.

(e) Subject to the provisions of Article VII, Section 2, any person, partnership, firm or corporation employing "Electricians" and doing business within the Wage Area as defined herein may be eligible to be a Participating Employer by either:

  (1) Providing for contributions to the Fund in a Collective Bargaining Agreement, or upon

  (2) The signing of an assent to this Agreement by the Local Union representing his employees and by the Division of the Association of which he is a member; or if he is not a member of the Association, the signing of such an assent by any other multi-employer group representing him which negotiates with the Union; or if he is not a member of any such multi-employer group, the signing of such an assent by him.

4.

Section 7. The terms "Trust", "Fund", "Trust Fund", "Welfare Fund" and "Welfare Trust Fund" as used herein, shall mean the NECA-IBEW WELFARE TRUST FUND.

Section 8. The terms "Trust Agreement", "Agreement" and "Agreement and Declaration of Trust" shall mean this instrument together with any and all amendments thereto or modifications thereof, adopted in accordance with the provisions hereof.

Section 9. The term "Trust Estate" shall mean all assets of every kind and nature constituting property of the Trustees, in their trust capacity, and subject to administration by them hereunder, including all employer contributions made or due to the Trustees, all income from investment of funds, all contracts with insurance companies, if any, purchased by the Trustees, all dividends, refunds or other sums received by the Trustees in connection with any such contract and any and all property or every kind and nature received from any source whatever and held by the Trustees for the uses and purposes set forth in this Trust Agreement.

Section 10. Trustees.

> (a) The term "Employer Trustee", as used herein, shall mean a Trustee appointed pursuant to the provisions of Article VII of this Agreement and Declaration of Trust.

> (b) The term "Union Trustee", as used herein shall mean a Trustee appointed by the Union, pursuant to the provisions of Article VII of this Agreement and Declaration of Trust.

> (c) The term "Trustees", as used herein, shall mean the Employer Trustees and the Union Trustees collectively.

Section 11. The term "Union" shall mean Local Unions affiliated with the International Brotherhood of Electrical Workers who have or will become bound to this Agreement.

Section 12. The term "Wage Area" shall mean the geographic limits of a Union's jurisdiction.

Section 13. The terms "Welfare Plan" and "Plan", as used herein, shall mean the plan or program of benefits to be established by the Trustees pursuant to this Agreement and Declaration of Trust.

5.

## ARTICLE III

### THE CREATION AND PURPOSE OF TRUST FUND

Section 1. The Welfare Fund was created is maintained by the Unions, Associations and Participating Employers to provide benefits for Employees and their beneficiaries in accordance with this Agreement and the Welfare Plan. All other Employers who accept and agree to be bound by this Agreement and Declaration of Trust shall be deemed a party hereto.

Section 2. The Trustees shall use and apply the Trust Fund for the following purposes:

(a) To pay, or provide for payment of, all reasonable and necessary expenses incurred in the establishment and creation of the Trust, collecting Employer Contributions, and administering the assets and affairs of the Welfare Fund, including, but not limited to, employment of such administrative, legal, accounting, investment, actuarial, and other clerical, expert or technical personnel as may be reasonably required in establishing, administering and maintaining an actuarially and financially sound Welfare Plan as well as the leasing or purchase of such space, materials, equipment and supplies as the Trustees in their discretion find necessary, expedient or appropriate to the proper performance of their duties and the furthering of the purposes of the Trust hereby created;

(b) To purchase or provide one or more of the following group benefits: Life Insurance or Death Benefits, Accidental Death and Dismemberment Benefits, Weekly Indemnity Benefits, Hospital Expense Benefits, and other medical care benefit coverages for Employees and/or their dependents in such amounts and upon such conditions as the Trustees, in their sole discretion, may determine. The amount and type of benefit coverage within a Wage Area or Wage Areas may be increased or decreased from time to time in the sole discretion of the Trustees; provided, however,

6.

discretion of the Trustees; provided, however,
that the amount and type of benefits shall at
all times be uniform among the Employees
and/or their dependents in such Wage Area(s);

(c) To establish, accumulate and invest such
reserves as the Trustees deem necessary or
desirable for the proper execution of their
duties hereunder, and the accomplishment
of the purposes of the Trust Fund;

(d) No part of the Trust Estate shall be used to
provide pension or annuity benefits.

## ARTICLE IV

## PAYMENT AND RECEIPT OF EMPLOYER CONTRIBUTIONS

Section 1.   Each Employer shall pay to the Trustees
an amount as provided in the Collective Bargaining Agreement
for each hour of work performed for an Employer by any
Eligible Employee who is represented for the purpose of
collective bargaining by a Local Union affiliated with the
International Brotherhood of Electrical Workers.

Section 2.   A Local Union and an Employer or Association
who have in effect a Welfare Agreement may become parties to
this Agreement to provide coverage under the plan for
employees of such Employer by signing a Participation
Agreement in such form as may be prescribed from time to
time by the Trustees and by meeting any other requirements
established by the Trustees.

Section 3.   The Trustees hereof may take over and
absorb or accept transfers of the assets of any local,
state, area or other welfare fund upon such terms and
conditions, including assumption of the obligations of such
other fund, as the Trustees hereof deem advisable in the
interest of extending the scope of the NECA-IBEW WELFARE
TRUST FUND.   The Trustees, however, may not take over,
absorb, or accept transfer of assets of any pension or
annuity fund or accept any obligations in connection with
annuities or pensions.

7.

Section 4. Contributions by Participating Employers
to the Trust Fund shall be paid monthly, on or before the
15th day of the month following the month for which they are
due. Contributions shall be paid by check, draft or money
order, drawn to the order of the Trust, and shall be mailed,
together with duplicate statements as hereinafter provided,
to the Fund Office.

Section 5. Statements accompanying monthly contributions
shall be made on a form furnished by the Trustees, and shall
contain such information as the Trustees may deem reasonable
and necessary to compute the amount of the contribution due
from each Participating Employer and the eligibility of
employees for benefits.

Section 6. If any Participating Employer fails to
make the required contribution on or before the day it is
due, the Trustees then may:

> (a) Apply any surplus monies in the Trust Fund
> for the account of said Participating Employer,
> without prejudice to the right of the Trustees
> to collect the payment in default, plus the
> cost and expense of said collection; or

> (b) Receive payment of the amount in default from
> a third party and subrogate their rights to
> collect the payment in default, plus the cost
> and expense of said collection to said third
> party; or

> (c) Institute, prosecute or intervene in such
> judicial proceedings as may be necessary or
> desirable to accomplish the collection of the
> contributions of a defaulting Participating
> Employer.

## ARTICLE V

## COLLECTION OF EMPLOYER CONTRIBUTIONS

Section 1. The Trustees shall have the power to
demand, collect and receive Employer Contributions from
any contributing Employer on the actual number of hours
for which each Employee has worked, and shall hold such
monies for the purposes specified in Article III of this
Agreement and Declaration of Trust.

8.

Section 2.    Any authorized representative of the
Trustees shall have the right at all reasonable times during
business hours to enter upon the premises of any Employer
and to audit, examine and copy such books, records, papers
and reports of the Employer as may be necessary to determine
the number of employees, hours of work performed, place of
performance and other information pertinent to a determina-
tion of the proper amount of such Employer's contribution to
the Trust Fund.

Each Employer shall make these books, records, papers
and reports available to any authorized representative of
the Trustees for such purposes.  In the event that the
Trustees utilize legal counsel to aid them in securing
compliance by any Employer with the provisions of this
Article, such Employer shall be liable for all costs
incurred, including, but not limited to, reasonable attorneys'
fees, even though no legal proceedings are actually initiated,
and court costs.

In the event the audit discloses that any Employer
during the period of the audit, has underpaid its contri-
butions the Employer shall be liable for the costs of the
examination.  The Trustees shall have the authority, however,
to waive all or part of such costs for good cause shown.

Section 3.    It is recognized and acknowledged by all
parties including the Participating Employers, that the
regular and prompt payment of contributions is essential to
the maintentance of an employee benefit plan and that it
would be extremely difficult, if not impracticable, to fix
the actual expense and damage to the plan which would result
from the failure of an individual Employer to pay the
required contributions within the time provided.  Therefore,
if any individual Employer is delinquent, i.e. shall fail to
pay the required contribution by the due date, such Employer
shall be additionally liable for liquidated damages in the
aggregate sum of:

> (a)  $50.00 per month on each monthly report
>      and/or contributions that are not received by
>      the 15th of the month up to a maximum of
>      $500.00; and
>
> (b)  twice the prime interest rate on the amount
>      of each month's delinquent contributions,
>      compounded monthly.

In the event the Trustees place the account in the
hands of legal counsel for collection, the delinquent
Employer shall be liable for reasonable attorneys' fees, and

for all reasonable costs incurred in the collection process,
including, but not limited to, court fees and audit fees.
The Trustees shall have the authority, however, to waive all
or part of the liquidated damages, interest, attorneys'
fees, or collections costs, for good cause shown.

## ARTICLE VI

### GENERAL POWERS AND DUTIES OF THE TRUSTEES

The Trustees shall have and are hereby given, in
addition to those granted by law, or granted elsewhere in
this instrument the complete right, title, control and
supervision of the Trust Fund and Trust Estate and in
connection therewith are given the power to:

Section 1.  Invest and reinvest such funds as in their
sole judgment are not required to defray the current expenses
of the Trust Fund;

Section 2.  Deposit uninvested funds forming part
of the Trust Estate in such depositories as they may from
time to time select such funds shall be deposited in federally
insured accounts, except to the extent that the Trustees
otherwise deem necessary or desirable;

Section 3.  Sell, exchange, lease, convey, or dispose
of any property, real or personal, at any time forming part
of the Trust Estate upon such terms and conditions as they
deem proper and to execute and deliver any and all documents
required in connection therewith;

Section 4.  Exercise options, conversion privileges,
or rights to subscribe for additional securities and to make
payment therefor;

Section 5.  Consent to, or participate in dissolutions,
reorganizations, consolidations, mergers, sales, leases,
mortgages, transfers or other changes affecting securities
or investments held by them and in connection therewith to
pay any assessment, subscription or other charges;

Section 6.  Enter into any and all contracts and
agreements including, but not limited to Reciprocal Agreements
with other employee benefit welfare plans which are in their
opinion necessary or desirable to carry out the purposes of
the Trust;

10.

**Section 7.** Compromise, settle, arbitrate and release claims or demands in favor of, or against, the Trust Fund on such terms and conditions as they deem advisable;

**Section 8.** Keep property or securities registered in the names of the Trustees or any nominee selected by them and to place any property or securities in the custody of any bank or trust company for safekeeping;

**Section 9.** Borrow money in such amounts and upon such terms, conditions and security as they deem advisable or necessary in carrying out the purposes of the Trust Fund, and to mortgage or pledge any property forming part of the Trust to secure repayment of any such loan;

**Section 10.** Pay any taxes or assessments for which the Trust Fund or the Trustees in their trust capacity are liable;

**Section 11.** Keep true and accurate books of account and records of all their transactions, meetings and actions taken at such meetings or by informal action of the Trustees. They shall procure an audit of the books of the Trust by a Certified Public Accountant not less frequently than once each year and a copy of each such audit shall be kept available for inspection by any interested person during business hours at the office of the Trustees;

**Section 12.** Formulate and promulgate a Welfare Plan and any and all rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust Fund and the accomplishment of its purposes so long as such Welfare Plan and rules and regulations are not inconsistent with the provisions of this instrument and not contrary to applicable federal law. Such Welfare Plan and rules and regulations shall set forth terms, conditions, amounts and manner in which benefits shall be paid and shall specify the terms with which Employees must comply in order to become eligible to receive such benefits. Copies of the Welfare Plan, rules and regulations shall be kept on file at the office of the Trustees for inspection by interested persons and copies of summaries thereof shall be distributed to each Union, Employees and Employers. Such rules, regulations and plan may be amended by the Trustees at any time and from time to time and when so amended copies of the amendments and/or summaries shall be placed on file and distributed in the same way and to the same persons and organizations as the original;

**Section 13.** Construe the provisions of this instrument and any amendment of it as well as the Welfare Plan any and rules and regulations formulated thereunder and any amendment of it and the construction adopted by the Trustees acting in

11.

Section 14. Employ persons, including attorneys, auditors, actuaries, consultants, investment advisors, or agents, to advise or assist the Trustees in the performance of their duties, to act without independent investigation upon their recommendations, and instead of acting personally, to employ one or more agents to perform any act of administration, whether or not discretionary;

Section 15. In their discretion, and to the extent they deem it wise, beneficial or necessary to appoint a Bank or Trust Company to be designated as Corporate Investment Advisor and/or Custodian and to enter into or execute an Agreement or Agreements with such Bank or Trust Company to provide for investment counsel and/or custodianship of any of the assets of the Trust Fund with such other provisions incorporated therein as they deemed advisable in the sole discretion of the Trustees for the proper management and . custodial care of the Welfare Fund;

Section 16. Invest all or part of the Fund assets in a bank or similar financial institution supervised by the United States or a State notwithstanding the fact that such bank or financial institution is or may be a fiduciary of the Trust Fund if such deposits bear a reasonable rate of interest;

Section 17. Authorize by resolution the appointment of an investment manager or managers to manage (including the power to acquire and dispose of) any assets of the Plan. For the purpose of this section, the term "investment manager or managers" shall include only a person who or which is (i) registered as an investment adviser under the Investment Advisers Act of 1940; (ii) is a bank, as defined in that Act; or (iii) is an insurance company qualified to perform services, such as managing, acquiring or disposing of any assets of the Plan under the laws of more than one State, who or which shall acknowledge in writing that he or it is a fiduciary with respect to the Trust Fund;

Section 18. Invest and reinvest such part of the Trust Fund as deemed advisable to invest which is not required to meet current expenditures. Instructions or orders for purchase, sale, withdrawal, delivery and other handling of securities, investments, and reinvestments shall

12.

be signed by two Trustees, provided one is an Employer
Trustee and one a Union Trustee and the authority of said
two Trustees is evidenced by a certified copy of a Resolution
adopted at any regular or special meeting of the Trustees.
Any person, firm or corporation acting pursuant to the
direction of the Trustees in reliance on a certified copy of
such Resolution shall be as fully protected as though acting
under direction signed by all Trustees;

Section 19. In order to provide a satisfactory diver-
sification of investments, invest all or any part of the
assets of the Trust Fund in any group, pooled or collective
investment trust which then provides for the pooling of
assets of plans described in Section 401(a) of the Internal
Revenue Code of 1954 and exempt from tax under Section
501(a) of the Internal Revenue Code of 1954, or any comparable
provisions of any future legislation that amends, supplements
or supersedes these Sections, provided that such group,
pooled or collective investment trust is excempt from tax
under the Internal Revenue Code of 1954, as amended, or
regulations or rulings issued by the Internal Revenue
Service. The provisions of the documents governing such
group, pooled or collective investment trust, as it may be
amended from time and time, are hereby made a part of this
Trust Agreement;

Section 20. Provide for the disbursement of funds by
any depository by check, draft, voucher, or other form of
withdrawal, signed by any two Trustees, providing one is an
Employer Trustee and the other a Union Trustee. Any signature
provided for in this Section may be a manual or facsimile
signature affixed mechanically upon such terms and conditions
as the Trustees may direct. The Trustees designate and
authorize the Administrative Fund Manager to sign checks and
orders, not to exceed $3,000 upon the bank accounts of the
Trust Fund;

Section 21. In general, the Trustees shall have the
power to do any and every act which may be reasonably
necessary to accomplish the purposes for which the Trust
Fund is created whether or not such act is expressly
authorized hereby;

## TRUSTEES

## SELECTION, TERM OF OFFICE AND MEETINGS

Section 1.    The Trustees shall initially be seven in number, consisting of three Trustees designated as Employer Trustees, three Trustees designated as Union Trustees and one Trustee designated as the Neutral Trustee, in compliance with Section 302(c) of the Labor-Management Relations Act. Each Trustee shall continue to serve until such Trustee resigns, dies, is removed or until his successor has filed a written acceptance of appointment.    A Successor Trustee shall be appointed to fill a vacancy by the group which had appointed the original Trustee.

Section 2.

(a)    If Employers having their principal place of business in any Wage Area other than the Decatur Wage Area become Participating Employers as hereinafter provided, the number of Trustees shall be increased to permit one Employer Trustee and one Union Trustee to be appointed to represent each such Wage Area, subject to Section 3 of this Article.    In no event shall any Trustee who is appointed as an Employer or Union Trustee from one Wage Area be permitted to be appointed or act on behalf of any other Wage Area.

(b)    If employers in the teleconnect-interconnect industry become Participating Employers by virtue of entering into collective bargaining agreements with Local Unions in the teleconnect-interconnect industry, the number of Trustees shall be increased to permit one Employer Trustee and one Union Trustee to be appointed to represent such industry.    In no event shall any trustee who is appointed as an Employer Trustee or a Union Trustee from the teleconnect-interconnect industry be permitted to be appointed or act on behalf of any Wage Area.

Section 3.    Trustees, and Successor Trustees, from time to time shall be named as follows:

14.

(a)  An Employer Trustee shall be named by the
     Association or other multi-employer group
     representing the Participating Employers in
     the Wage Area.  If there is no such group, or
     if there is more than one such group, in a
     Wage Area, then the Trustees shall be named
     by a majority vote of the Participating
     Employers in the Wage Area.

(b)  A Union Trustee shall be named by the Local
     Union in the Wage Area.

(c)  No Employer or Union Trustee shall be named
     from a Wage Area unless such Wage Area is in
     a State adjacent to a State in which there is
     a Wage Area which currently has an Employer
     Trustee and a Union Trustee as of that date.
     When a Participating Employer and a Local
     Union from an area, in a State which is not
     adjacent to a State in which there is a
     Wage Area which currently has an Employer
     Trustee and a Union Trustee, are permitted to
     become parties to this Agreement, they agree
     to irrevocably designate the then acting
     Trustees or their Successors as being the
     Trustees to act for and on their behalf.

     A Local Union and a Participating Employer
     may become parties to this Agreement only
     ~~upon approv~~al of the Trustees by meeting such
     requirements as are established by the
     Trustees.

     An appropriate representative of the Employer
     or Union body naming the Trustee shall
     certify his name to the Trustees.

(d)  An Employer Trustee for the Participating
     Employers in the teleconnect-interconnect
     industry shall be named by the Association or
     other multi-employer group representing the
     Participating Employers in such industry.  If
     there is no such group, or if there is more
     than one such group in the industry, then the
     Trustee shall be named by a majority vote
     of the Participating Employers in such
     industry.

15.

(e)  A Union Trustee for the teleconnect-interconnect
     industry shall be named by the Local Union
     representing the employees in such industry.
     If there is more than one Local Union representing
     such employees, then a Union Trustee shall be
     named collectively by the Local Unions in the
     teleconnect-interconnect industry.

          Section 4.    An Employer Trustee or a Union Trustee
may be removed from office at any time by action of the
person or body entitled to designate his successor.  A
written notice of such action signed by an appropriate
representative shall be furnished to all other Trustees.

          Section 5.    A Trustee may resign and be fully discharged
from all further duty and responsibility hereunder by giving
ten days notice in writing of a desire so to do to the other
Trustees.   The Trustees may waive such ten days notice in
any instance where they deem such waiver desirable.   The
notice shall designate the date upon which the resignation
is to become effective.   The resignation shall become
effective on the date specified.

          Section 6.    In the event that there no longer exists
a Collective Bargaining Agreement between an Association or
multi-employer group and the Union within a particular Wage
Area, and the negotiation of a Successor Agreement is not
considered by the Trustees to be likely, the trustees
appointed by such Association or multi-employer group and the
Union may be removed from office, effective upon the later
of the termination date of the Collective Bargaining
Agreement theretofore in effect and the date on which the
Trustees by motion decide to invoke the provisions of this
Section 6.

          Section 7.    Any Successor Trustee, and any Trustee
hereinafter appointed to the office by reason of an increase
in the number of Trustees as hereinabove provided, shall
immediately upon his appointment and acceptance of the
trusteeship in writing, become vested with the property,
rights, powers and duties of a Trustee hereunder with like
effects as if originally named as a Trustee in this instru-
ment, and all of the Trustees then in office shall be
immediately notified.

          Section 8.    At the first meeting of each calendar
year, the Trustees shall elect a Chairman and Secretary to
serve for a term commencing immediately upon their election
until their successors have been selected at a subsequent
election.   The Chairman and Secretary shall be selected from
different groups, i.e., the Employer Trustees Group and the
Union Trustees Group, it being the intention of the parties
that at no time shall both offices be held by individuals

16.

from the same group. The Chairman shall preside at all meetings of the Trustees. The Secretary shall keep accurate minutes of the proceedings of all meetings and shall with reasonable promptness send copies of such minutes and records to the Trustees.

Section 9. Meetings may be called by the Chairman or by any eight Trustees and the Trustees may by resolution provide for the regular meetings not to exceed one meeting per month. Ten days written notice shall be given of all meetings, whether regular or special, designating the time and place of said meetings. No notice shall be required if all Trustees are notified in writing as to the time and place of any meeting and no Trustee objects to the holding of such meeting or if all of the Trustees are present at such meeting.

Section 10. Any action taken by the Trustees pursuant to this Agreement shall be by a majority vote of the Trustees present at any meeting at which a quorum is present. A quorum of the Trustees shall consist of eight Trustees, providing three of whom are Employer Trustees and three of whom are Union Trustees. If at any meeting of the Trustees the representation of the Employer and Union groups is unequal, each trustee in the smaller group shall be allowed an additional fractional vote so that the smaller group of trustees shall have the same voting power as that of the larger group.

Section 11. The Trustees may take any action without a meeting which they might take at a meeting, provided there shall be unanimous written concurrence by all of the Trustees then in office.

Section 12. The Trustees may receive no compensation for attending meetings of the Welfare Fund. A trustee may, however, receive reimbursement for expenses properly and actually incurred in the performance of his duties hereunder, including those expenses incurred in connection with attendance at educational meetings and seminars.

Section 13.

    (a) A deadlock shall be deemed to exist whenever a motion or resolution made or proposed by any one of the Trustees and seconded by another Trustee is neither adopted nor rejected by a majority vote of the Trustees.

    (b) In the event of a deadlock on any one or more issues, the Trustees, at the request of a majority of the members of either the Union

17.

Trustees or the Employer Trustees, shall
select an impartial arbitrator to decide the
dispute. In the event that the Trustees
cannot agree on the selection of an arbitrator
by majority vote within a reasonable time,
under the circumstances, and, in any event,
if the Trustees are unable to agree by
majority vote on the selection within fifteen
days of the request that an arbitrator be
selected, then any two Trustees may petition
the United States District Court for the
District where the Welfare Fund then has its
principal office to appoint an impartial
arbitrator.

(c)    Unless otherwise agreed by majority vote of
the Trustees, the arbitration shall be
conducted under the Voluntary Labor Arbitration
Rules then obtaining of the American Arbitration
Association as to any procedural matter not
specifically covered in this Agreement and
Declaration of Trust.

(d)    The impartial arbitrator shall render his
written decision within such reasonable time
as is set by the Trustees. The decision of
the impartial arbitrator shall be final and
binding on the Trustees, all parties hereto
and all persons interested or concerned with
the matter or with the Trust Fund. The
impartial umpire shall only consider the
issue or issues upon which the deadlock
occurred and the scope of inquiry and decision
shall be so limited as well as being limited
to an interpretation of this Trust Agreement
and the Welfare Plan and rules and regulations
promulgated hereunder. The impartial arbitrator
shall have no jurisdiction or authority to
change or modify the provisions of this Trust
Agreement or the Welfare Plan and rules and
regulations promulgated hereunder, or to
decide any issue arising under or involving
the interpretation of any Collective Bargaining
Agreement, and such impartial arbitrator
shall have no power or authority to change or
modify any provisions of any Collective
Bargaining Agreements.

(e)    Expenses of Arbitration. The compensation
and expenses of the impartial umpire or

18.

arbitrator so selected or appointed and all
expenses in connection with or incidental to
the arbitration and which are incurred by the
Trustees on each side of the matter or
dispute shall be a proper charge against
the Trust Fund and shall be paid by the
Trustees out of the Trust.

## ARTICLE VIII

### APPEALS COMMITTEE

Section 1.    At, or following, the first meeting of
each calendar year, the newly selected Chairman of the Board
of Trustees shall appoint from among the membership of the
Board of Trustees, the members of the Appeals Committee.

Section 2.    The Appeals Committee shall consist of ten
members, five chosen from among the Employer Trustees and
five from among the Union Trustees.

Section 3.    The Appeals Committee shall select from
among their membership a Chairman and a Secretary, each
of whom shall be selected from different groups, i.e., the
Employer Trustees Group and the Union Trustees Group, it
being the intention of the Trustees that at no time shall
both offices be held by individuals from the same group.
The Chairman shall preside at all meetings of the Appeals
Committee.  The Secretary shall keep accurate minutes of the
proceedings and cause to be prepared such documents and
correspondence as may be required from time to time.

Section 4.    The Appeals Committee shall review all
appeals of benefit denials and make such a determination
as in their sole discretion they deem proper.  Their decision
shall be binding on the Board of Trustees of NECA-IBEW
WELFARE TRUST FUND.

Section 5.    The Appeals Committee shall meet upon the
call of the Chairman of NECA-IBEW WELFARE TRUST FUND at
such times and places as he shall determine, unless the
Committee members otherwise agree. No meeting of the Committee
shall take place except upon ten days notice, unless the
Committee members otherwise agree.

Section 6.    Decisions of the Appeals Committee shall
be by majority of the votes cast at any meeting at which
a quorum is present. A quorum of the Appeals Committee
shall consist of four trustees in attendance at a meeting,

19.

two of whom are Employer Trustees and two of whom are Union Trustees. If at any meeting of the Appeals Committee the representation of the Employer and Union Trustees is unequal, each Trustee in the smaller group of trustees shall be allowed an additional fractional vote so that the smaller group of trustees shall have the same voting power as that of the larger group.

Section 7. In the event that there is no majority on a vote to reverse an appealed decision of benefit denial, that decision shall be affirmed and be the decision of the Appeals Committee.

Section 8. In the event that any member of the Appeals Committee shall resign or be unable to serve by reason of death or incapacity, the Chairman of the NECA-IBEW WELFARE TRUST FUND shall appoint his successor. The Chairman shall not have the power to remove any member of the Appeals Committee, nor to appoint a successor, except as set forth in Sections 1 and 8 of this Article.

Section 9. The members of the Appeals Committee shall be reimbursed for expenses properly and actually incurred in the performance of their duties as members of the Appeals Committee.

## ARTICLE IX

### STEERING COMMITTEE

Section 1. At, or following, the first meeting of each calendar year, the newly selected Chairman of the Board of Trustees shall appoint from among the membership of the Board of Trustees, the members of the Steering Committee.

Section 2. The Steering Committee shall consist of ten members, five chosen from among the Employer Trustees and five from among the Union Trustees.

Section 3. The Steering Committee shall select from among their membership a Chairman and a Secretary, each of whom shall be selected from different groups, i.e., the Employer Trustees group and the Union Trustees group, it being the intention of the Trustees that at no time shall both offices be held by the individuals from the same group. The Chairman shall preside at all meetings of the Steering Committee. The Secretary shall keep accurate minutes of the proceedings and cause to be prepared such documents and correspondence as may be required from time to time.

20.

Section 4.  The Steering Committee shall have the authority to act on behalf of the Board of Trustees in all matters within the scope of Article _____.

Their decision shall be binding on the Board of Trustees of NECA-IBEW WELFARE TRUST FUND.

Section 5.  The Steering Committee shall meet upon the call of the Chairman of NECA-IBEW WELFARE TRUST FUND at such times and places as he shall determine, unless the Steering Committee members otherwise agree. No meeting of the Steering Committee shall take place except upon ten days notice, unless the Steering Committee otherwise agree.

Section 6.  Decisions of the Steering Committee shall be by majority of the votes cast at any meeting at which a quorum is present. A quorum of the Steering Committee shall consist of six trustees in attendance at a meeting, three of whom are Employer Trustees and three of whom are Union Trustees. If at any meeting of the Steering Committee the representation of the Employer and Union Groups is unequal, each Trustee in the smaller group shall be allowed an additional fractional vote so that the smaller group of Trustees shall have the same voting power as that of the larger group.

Section 7.  In the event that any member of the Steering Committee shall resign or be unable to serve by reason of death or incapacity, the Chairman of the NECA-IBEW WELFARE TRUST FUND shall appoint his successor. The Chairman shall not have the power to remove any member of the Steering Committee, nor to appoint a successor, except as set forth in Sections 1 and 7 of this Article.

Section 8.  The members of the Steering Committee shall be reimbursed for expenses properly and actually incurred in the performance of their duties as members of the Steering Committee.

## ARTICLE X

### DELINQUENCY COMMITTEE

Section 1.  At, or following, the first meeting of each calendar year, the newly selected Chairman of the Board of Trustees shall appoint from among the membership of the Board of Trustees the members of the Delinquency Committee.

Section 2.  The Delinquency Committee shall consist of four members, two chosen from among the Employer Trustees and two from among the Union Trustees.

21.

Section 3.    The Delinquency Committee shall select from among their membership a Chairman and a Secretary, each of whom shall be selected from different groups, i.e., the Employer Trustees group and the Union Trustees group, it being the intention of the Trustees that at no time shall both offices be held by individuals from the same group. The Chairman shall preside at all meetings of the Delinquency Committee.    The Secretary shall keep accurate minutes of the proceedings and cause to be prepared such documents and correspondence as may be required from time to time.

Section 4.    The Delinquency Committee shall have the authority to review each case in which costs, liquidated damages or fees are assessed pursuant to the provisions of this Article and are empowered in their discretion to waive all or part of such costs, liquidated damages or fees for good cause shown.    Their decision shall be binding on the Board of Trustees of the NECA-IEEW WELFARE TRUST FUND.

Section 5.    The Delinquency Committee shall meet upon the call of the Chairman of the NECA-IEEW WELFARE TRUST FUND at such times and places as he shall determine, unless the Committee members otherwise agree.    No meeting of the Committee shall take place except upon ten days notice, unless the Committee members otherwise agree.

Section 6.    Decisions of the Delinquency Committee shall be by majority of the votes cast at any meeting at which a quorum is present.    A quorum of the Delinquency Committee shall consist of three trustees in attendance at a meeting, one of whom is an Employer Trustee and one of whom is a Union Trustee.    If at any meeting of the Delinquency Committee the representation of the Employer and Union Groups is unequal, each Trustee in the smaller group shall be allowed an additional fractional vote so that the smaller group of trustees shall have the same voting power as that of the larger group.

Section 7.    Unless a motion to waive all or a part of the costs, liquidated damages or fees assessed pursuant to this Article receives a majority of the votes cast then such costs, liquidated damages or fees shall not be waived.

Section 8.    In the event that any member of the Delinquency Committee shall resign or be unable to serve by reason of death or incapacity, the Chairman of the NECA-IEEW WELFARE TRUST FUND shall appoint his successor.    The Chairman shall not have the power to remove any member of the Delinquency Committee, nor to appoint a successor, except as set forth in Sections 1 and 8 of this Article.

22.

Section 9.    The members of the Delinquency Committee shall be reimbursed for expenses properly and actually incurred in the performance of their duties as members of the Delinquency Committee.

## ARTICLE XI

### RESTRICTIONS ON INTEREST OF CERTAIN PERSONS AND POWERS OF THE TRUSTEES

Section 1.    The Union, any Employer, any Employee, or Trustee or any person claiming by, through or under any of the aforementioned shall not have any right, title or interest in or to the Trust Fund or Trust Estate or any part thereof except as provided by this Trust Agreement or the Welfare Plan.

Section 2.    No person entitled to benefits under the Welfare Plan formulated by the Trustees shall have the right or option to receive anything in lieu of, or in substitution for, the benefits under such Plan.

Section 3.    All benefit payments shall, except as in this Article specifically otherwise provided, be paid to the Employee or his beneficiary in person, or upon his personal receipt and no benefit payable hereunder shall be payable, transferable or otherwise assignable in anticipation of payment voluntarily, involuntarily or by operation of law and no benefit due hereunder shall be liable in any way for the obligations of the Employee entitled thereto.    Except, however, benefits which may become so payable may be assigned, in accordance with such procedures and regulations as may be prescribed from time to time by the Trustees, to a hospital, other health care facility, or to a physician providing services for which benefits become payable.

Section 4.    If any benefit under the Welfare Plan becomes payable to an infant, a person under legal disability, or a person who, though not adjudicated to be incompetent, is in the opinion of the Trustees, unable to receive and properly use such payments, such payments may be paid out by the Trustees in whichever of the following ways the Trustees deem to be in the best interest of the person entitled thereto:

> (a)    directly to the infant; or other person, entitled;
>
> (b)    to the conservator or guardian of such person;

(c) to the spouse, parent, brother, sister or such other person as in the opinion of the Trustees is best suited to use the payment for the benefit of the person entitled thereto;

(d) by the Trustees directly for the support, maintenance and welfare of the person entitled thereto.

Section 5.   The right of any person to benefits under the Welfare Plan formulated by the Trustees shall not constitute a contract between any beneficiary and the Trustees for the payment of such benefits.  If benefits are provided by insurance purchased by the Trustees, neither the Trustees nor the Trust Fund shall be charged with any undertaking with regard to the payment of benefits other than payment of premiums due under the terms of the contract with the insurance company.

Section 6.   No individual Employer or Union, their representatives or officers shall be liable or responsible for any debts, liabilities, obligations, or acts of the Trust Fund or Trustees.  No Employee or any person claiming by or through such Employee shall have any individual right, title, interest or claim against any Employer, any Employer's contributions, any Union or the Trust Fund except such rights as are conferred by this Trust Agreement or the Welfare Plan formulated by the Trustees.

Section 7.  If a dispute arises as to the proper person or persons to whom any benefits shall be paid under the Plan formulated by the Trustees, the Trustees shall withhold payment until the dispute is adjudicated or the Trustees and the Trust Fund have been indemnified against loss by reason of the dispute in a manner satisfactory to the Trustees. The decision of the Trustees as to what is satisfactory indemnification shall be final.

## ARTICLE XII

## FIDELITY BONDS AND INSURANCE

Section 1.   The Trustees shall, by resolution, provide for fidelity bonds with such companies and in such amounts as they may determine, for all persons, including the Trustees, who are authorized to receive, withdraw or otherwise deal with funds forming part of the Trust Fund.

24.

Section 2.    The Trustees shall purchase insurance for the Fund or its fiduciaries to cover liability or losses occurring by reason of the act or omission of a fiduciary, if such insurance permits recourse by the insurer against the fiduciary in the case of a breach of a fiduciary's obligations by such fiduciary.

## ARTICLE XIII

### INDEMNIFICATION AND PROTECTION OF TRUSTEES

Section 1.    Except in accordance with applicable federal law, no Trustee shall be personally liable for the payment, performance or discharge of any obligation, debt, contract or liability of the Trust Fund.  All contracts, debts, obligations and liabilities contracted or incurred by the Trustees in the proper discharge of their duties shall be paid and discharged out of the Trust Fund; provided,    . however, that nothing contained herein shall exempt any Trustee from liability arising out of his own wilful misconduct, bad faith or gross negligence, or entitle such Trustee to indemnification for any amounts paid or incurred as a result thereof.

Section 2.    To the extent permitted by law, the Trustees shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of the Trust, so long as they act in good faith and without gross negligence; nor shall any Trustee, in the absence of his own wilful misconduct, bad faith or gross negligence, be personally liable for the acts or omissions (whether performed at the request of the Trustees or not) of any other Trustee, or of any Employee, agent or attorney elected or appointed by or acting for the Trustees.

Section 3.    The Trustees shall be fully protected in acting upon any instrument in writing believed by them to be genuine and signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Section 4.    The Trustees may seek judicial protection by any action or proceeding they may deem necessary to settle their accounts, or to obtain a judicial determination or declaratory judgment as to any question or construction of the Trust Agreement or instruction as to any action thereunder.

25.

Section 5.    To the extent permitted by law, the costs and expenses of engaging or retaining legal counsel, or of any action, suit or proceeding brought by or against the Trustees or any of them, shall be paid from the Trust Fund, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding that such Trustee was acting in bad faith or was grossly negligent in the performance of his duties hereunder.

## ARTICLE XIV

### FUNDING

The Trustees shall establish by resolution and take steps to carry out a funding policy consistent with the purposes of the Trust Fund and the requirements of any applicable federal law. This funding policy shall be reviewed no less often than once each year. Should the Trustees want to alter the funding policy, they may do so by a resolution receiving a majority of the votes cast at any meeting at which a quorum is present.

## ARTICLE XV

### OBLIGATIONS OF EMPLOYERS AND OTHERS DEALING WITH THE TRUSTEES

Section 1.    No person dealing with the Trustees shall be (1) obligated to see to the application of any money or property paid or delivered to the Trustees, (2) obligated to see that the terms of this Trust Agreement are complied with, and (3) privileged to inquire into the necessity or expediency of any act of the Trustees.

Section 2.    Every instrument executed by the Trustees, or executed by another in accordance with authority granted by the Trustees shall be conclusive evidence, in favor of each person relying thereon that (1) at the time of delivery of the instrument this Agreement was in full force and effect, (2) the instrument was executed in accordance with the terms and conditions hereof, and (3) the Trustees were duly authorized and empowered to execute or cause the instrument to be executed.

Section 3.    The receipt of the Trustees for any money or property due the Trust Fund and received by the Trustees shall operate as a discharge of the person or persons

26.

paying, conveying or delivering such money or property, to
the extent of the value of such money or property.

Section 4.    Every Employer shall, when so required
by the Trustees, promptly furnish such information, Employee
records, and reports as the Trustees may deem necessary to
the proper performance of their duties.

Section 5.    Unless the Trustees shall receive from
some interested person in this Trust satisfactory written
proof of any death, birth, marriage or other event upon
which the right or privilege to benefit in any manner under
any insurance contract or Plan provisions may depend, the
Trustees shall not be liable to any person whose interest
shall have been affected by such event.

## ARTICLE XVI

### MISCELLANEOUS

Section 1.    The personal pronouns in this instrument
shall be read and construed as singular or plural and all
words of masculine gender shall be construed as feminine and
all words in the singular shall be read and construed as
though plural wherever such construction is necessary to
give a reasonable meaning to the provisions of the instrument.

Section 2.    The titles of the Articles of this
instrument are included solely for convenience and are
not to be considered a part of the substance.

Section 3.    If any provision of this Trust Agreement
is declared illegal or invalid by any court, legislative
enactment or administrative rule, the invalidity of such
provision shall not impair the vailidity of the remaining
provisions.

Section 4.    The Principal Office of the Trust shall be
determined from time to time by the Trustees.

Section 5.    This Agreement and Declaration of Trust
and rules and regulations formulated thereunder shall be
construed in accordance with the laws of the State of
Illinois, to the extent that such laws are not preempted by
the laws of the United States of America.

27.

## ARTICLE XVII

### WITHDRAWAL OF WAGE AREA

**Section 1.** The provisions of this Article XVII shall take precedence over any other provision of this Agreement and of the Welfare Plan promulgated thereunder.

**Section 2.** In the event that a collective bargaining agreement requiring contributions to the Welfare Fund is not succeeded by a collective bargaining agreement requiring contributions to the Welfare Fund at the minimum full hourly rate of contributions required by the Board of Trustees to establish eligibility for benefits, then a Participating Employer which is no longer obligated under the terms of a collective bargaining agreement to make such contributions to the Welfare Fund shall cease being a Participating Employer on the date that such obligation terminates, and its employees shall not be Employees as to any claims incurred on and after the thirty-first calendar day following the date on which the obligation to make such contributions terminated.

**Section 3.** Notwithstanding the provisions of subsection (2) hereof, if there is a collective bargaining agreement in effect which requires contributions to be made to the Welfare Fund but under which less than the minimum full rate of contributions is required to be paid and sufficient supplemental payments are made by another trust fund or on a self-payment basis by Employees, in such manner as may be established by the Board of Trustees, so that such supplemental payments when added to the hourly rate of contributions required to be made under the collective bargaining agreement are equal to or in excess of the minimum full hourly rate of contributions established by the Trustees, the Participating Employers and Employees will continue to be treated as if the successor collective bargaining agreement did require contributions to be made at least the minimum full hourly rate for as long as the supplemental payments continue to be made.

**Section 4.** In the event that Section 2 of this Article takes effect benefits shall be paid to or on behalf of former Employees and their dependants in accordance with the Welfare Plan for all claims incurred on or before the thirty-first day following the date on which the obligation to make the required contributions terminated but the individual from the withdrawing wage area shall not either individually or collectively have the right to receive any

receive an aliquot share of the assets of the Trust Estate,
nor shall any withdrawing union or trust fund associated
with any withdrawing union have any such right.

## ARTICLE XVIII

### AMENDMENTS

This Trust Agreement may be amended at any time and
from time to time by resolution of the Trustees adopted at
any regular or special meeting by a majority vote where a
quorum is present or by written instrument executed by the
Trustees then in office, provided, however, (1) no amendment
shall divert the Trust Fund or any part thereof to a
purpose other than that set forth herein; and (2) no
amendment shall provide for an unequal number of Employer
and Union Trustees.

## ARTICLE XIX

### TERMINATION OF TRUST

Section 1.    This Agreement and Declaration of Trust
may be terminated, except for the purpose of winding up the
affairs of this Trust Fund and for liquidation of the
Trust Fund, by an instrument in writing, executed by all
Employers, the Union and all of the Trustees when there are
no longer in force and effect any Collective Bargaining
Agreement requiring contributions to the Fund.  This Agreement
and Declaration of Trust, as then amended, shall continue in
full force and effect during the period of the winding up
of the affairs of this Trust and the liquidation of the
Fund.

Section 2.    The Trustees shall continue as Trustees
for the purpose of winding up the Trust and liquidating the
Trust Fund and - consistent with the foregoing provisions of
this Article - may take any action with regard to any
policy, contract, obligation of claim by or against the
Trust Fund and in regard to any and all property and assets
of the Trust Fund which may be required or which they may
deem necessary or advisable to effectuate and complete the
winding up of the affairs and the liquidation of the Trust
Fund.

29.

Section 3.   In the event that the Trust hereby
created is terminated, the Trustees shall apply the Trust
Estate in accordance with applicable federal law and in such
manner as will, in their opinion, best effectuate the
purpose of the Trust Fund, however, no part of the corpus or
income of the Trust Fund shall be used for a purpose other
than the in accordance with this Trust Agreement or the
Welfare Plan adopted by the Trustees under the terms hereof.

## ARTICLE XX

### QUALIFICATION FOR TAX EXEMPTION

The Trustees are authorized to make such applications
and disclosures to the United States Treasury Department and
the United States Department of Labor as may be necessary to
secure and retain rulings that this Trust Fund and Welfare
Plan formulated by the Trustees are qualified under the
pertinent provisions of the Internal Revenue Code, of 1954,
as amended, and Employee Retirement Income Security Act of
1974, as amended.

IN WITNESS WHEREOF, the undersigned, on behalf of the
Board of Trustees of NECA-IBEW WELFARE TRUST FUND, do
hereunto set their hands and seals this ___4th___ day of
___July___, 1987.

_____
CHAIRMAN

_____
SECRETARY

30.

AMENDMENT TO

## NECA-IBEW WLEFARE TRUST FUND

## AGREEMENT AND DECLARATION OF TRUST

Pursuant to the authority vested in them by Article VI, Section 1 of the Agreement and Declaration of Trust of the NECA-IBEW WELFARE TRUST FUND, the Trustees hereby amend the Agreement and Declaration of Trust of the NECA-IBEW WELFARE TRUST FUND effective July 10, 1986 by adding to ARTICLE X thereof the following:

Section 4.

A. At the first meeting of each calendar year, the newly selected Chairman of the Board of Trustees shall appoint from among the membership of the Board of Trustees the members of the Delinquency Committee.

B. The Delilnquency Committee shall consist of four (4) members, two (2) chosen from among the Employer Trustees and two (2) from among the Union Trustees.

C. The Delinquency Committee shall select from among their membership a Chairman and a Secretary, each of whom shall be selected from different groups, i.e., the Employer Trustees Group and the Union Trustees Group, it being the intention of the Trustees that at no time shall both offices be held by the individuals from the same group. The Chairman shall preside at all meetings of the Delinquency Committee. The Secretary shall keep accurate minutes of the proceedings and cause to be prepared such documents and correspondence as may be required from time to time.

D. The Delinquency Committee shall have the authority to review each case in which costs, liquidated damages or fees are assessed pursuant to the provisions of this Article and are empowered in their discretion to waive all or part of such costs, liquidated damages or fees for good cause shown. Their decision shall be binding on the Board of Trustees of the NECA-IBEW WELFARE TRUST FUND.

E.   The Delinquency Committee shall meet upon the call of the Chairman of the NECA-IBEW WELFARE TRUST FUND at such times and places as he shall determing, unless the committee members otherwise agree; no meeting of the committee shall take place except upon 10 days notice.

F.   Decisions of the Delinquency Committee shall be by majority of the votes cast at any meeting at which a quorum is present.   A quorum of the Delinquency Committee shall consist of three (3) trustees in attendance at a meeting, one(1) of whom is an Employee Trustee and one (1) of whom is a Union Trustee.   If at any meeting of the Delinquency Committee the representation of the Employer and Union Groups is unequal, each trustee in the smaller group shall be allowed an additional fractional vote so that the smaller group of trustes shall have the same voting power as that of the larger group.

G.   Unless a motion to waive all or a part of the costs, liquidated damages or fees assessed pursuant to this Article receives a majority of the votes cast then such costs, liquidated damages or fees shall not be waived.

H.   In the event that any member of the Delinquency Committee shall resign or be unable to serve by reason of death or incapacity, the Chairman of the NECA-IBEW WELFARE TRUST FUND shall appoint his successor.   The Chairman shall not have the power to remove any member of the Delinquency Committee, nor to appoint a successor, except as set forth in Subparagraphs (A) and (H) of this Section.

I.   The members of the Delinquency Committee shall be reimbursed for expenses property and actually incurred in the performance of their duties as members of the Delinquency Committee.


     In witness whereof, the undersigned, on behalf of the Board of Trustees of the NECA-IBEW WELFARE TRUST FUND do set their hands and seals this _____30th_____ day of October, 1986.


_____          _____
        CHAIRMAN                                    SECRETARY

## AMENDMENT TO

### NECA-IBEW WELFARE TRUST FUND

### RULES AND REGULATIONS

Pursuant to the authority vested in them by the Agreement and Declaration of Trust of the NECA-IBEW WELFARE TRUST FUND, under which the Trust Fund's Rules and Regulations are maintained, the Trustees hereby amend said Rules and Regulations, effective _____, by adding to Section 2 of Articles V, VI, and VII, the following:

Employers shall make contributions on behalf of each of its employees employed by the Employer in a management, supervisory, or other non-bargaining capacity who are also engaged in bargaining unit work. Such contributions shall be made on the basis of 160 hours per month, regardless of the number of hours actually worked. Each such Employer shall execute a Participation Agreement with the Trustees of the NECA-IBEW WELFARE TRUST FUND.

IN WITNESS WHEREOF, the undersigned, on behalf of the Board of Trustees of the NECA-IBEW WELFARE TRUST FUND, do set their hands and seals this _5th_ day of _November_, 1987.

_____
Chairman

_____
Secretary